IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JODY KING, | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR RELIEF** |
| Plaintiff, | |
| v. | 2:21-cv-00768-RJS-CMR |
| IC GROUP, INC., | Chief District Judge Robert J. Shelby |
| Defendant. | Magistrate Judge Cecilia M. Romero |

Plaintiff Jody King filed this action against her former employer, Defendant IC Group, Inc. (ICG), alleging it interfered with her right to employment leave under the Family and Medical Leave Act (FMLA); it failed to accommodate her disabilities as required by the Americans with Disabilities Act (ADA); it harassed and discriminated against her; and it retaliated against her for engaging in protected activities.[1]  On November 8, 2023, the court issued its Memorandum Decision and Order granting summary judgment in favor of ICG on all causes of action, save only for King's FMLA lack-of-notice claim.[2]  Now before the court is King's Motion for Relief from the court's Order.[3]

Given King's pro se status, the court liberally construes her Motion for Relief as bundling four distinct requests, which the court frames as independent motions: (1) a Motion for Reconsideration of the court's summary judgment Order; (2) a Motion for Rule 11 Sanctions; (3) a Motion to Compel Discovery; and (4) a Motion to Amend her Complaint.  For the reasons discussed below, the court DENIES all of King's requests.

---

[1] *See* Dkt. 3, *Amended Complaint* at 3; Dkt. 3-8, *Exhibit H to Amended Complaint: Causes of Action*.

[2] Dkt. 60, *Memorandum Decision and Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment* at 66.

[3] Dkt. 62, *Plaintiff's Motion for Relief from Order Granting (In Part) Defendant's Motion for Summary Judgment*.

## BACKGROUND AND PROCEDURAL HISTORY[4]

On November 8, 2023, the court issued its Memorandum Decision and Order, granting in part and denying in part ICG's Motion for Summary Judgment.[5]  The court granted ICG's Motion in its entirety, save only for King's FMLA lack-of-notice claim.[6]  On November 29, 2023, King filed her Motion for Relief.[7]  ICG filed its Opposition on December 13, 2023.[8]  The court has fully reviewed these materials, and having found that oral argument would not be materially helpful,[9] it is now prepared to rule on King's Motion.

## LEGAL STANDARD

King, though represented by counsel earlier in this litigation, now proceeds pro se.[10]  While the court "liberally construe[s] pro se pleadings, [King's] pro se status does not excuse [her] obligation . . . to comply with the fundamental requirements of the Federal Rules of Civil . . . . Procedure."[11]  Furthermore, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant" or to salvage her claims.[12]  Therefore, the court "will not supply additional facts, nor will [it] construct . . . legal theor[ies] for [a pro se] plaintiff."[13]

---

[4] The court assumes the parties' familiarity with the factual background and procedural history.  For a more complete discussion of the underlying facts of this litigation, the court suggests reviewing Dkt. 60 at 1–18.

[5] *Id.* at 66.

[6] *Id.*

[7] Dkt. 62.

[8] Dkt. 65, *Defendant's Opposition to Plaintiff's Motion for Relief from Order Granting (in Part) Defendant's Motion for Summary Judgment.*

[9] *See* DUCivR 7-1(g).

[10] *See* Dkt. 62 at 1 n.1 ("King, representing herself in pro se status, has not received legal assistance since June 2022. . . . Since June of 2022, King has diligently undertaken extensive research and study to manage her case to this point.").

[11] *Ogden v. San Juan Cnty.,* 32 F.3d 452, 455 (10th Cir. 1994) (citation omitted).

[12] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[13] *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam).

## ANALYSIS

King's Motion for Relief requests several discrete remedies which are evaluated under different legal standards.  The court liberally construes her brief as bundling four distinct Motions: (1) a Motion for Reconsideration; (2) a Motion for Rule 11 Sanctions; (3) a Motion to Compel Discovery; and (4) a Motion to Amend her Complaint.  The court addresses each in turn.

### I.    Motion for Reconsideration

#### a.  Legal Standard

Although not formally recognized by the Federal Rules of Civil Procedure, motions for reconsideration are generally construed under Rule 54(b), Rule 59(e), or Rule 60(b).[14]  King invokes Rule 60(b).[15]  However, Rule 60(b) is reserved for motions for reconsideration filed more than ten days after judgment,[16] and Rule 54(a) defines judgment as "a decree and any order from which an appeal lies."[17]  Here, the court's Order is not a judgment: it did not resolve all outstanding issues and is not yet appealable.  The FMLA lack-of-notice claim still remains.[18]  Therefore, Rule 60(b) is an inappropriate avenue for relief.

Nevertheless, motions for reconsideration are often filed without any rule specified, and district courts routinely evaluate the motions to determine whether they properly fall under Rule 54(b), Rule 59(e), or Rule 60(b), depending on the timing of the motion and the current

---

[14] *See Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (citing Fed. R. Civ. P. 59(e), 60(b), and 54(b)).

[15] Dkt. 62 at 3 ("Therefore, King also applies FRCP Rule 60(b)(3) Fraud upon the Court.").  King also "seeks relief under Rule 12(b)(6) . . . because ICG failed to allege facts that are true." *Id.* at 2.  However, a 12(b)(6) motion is used to dismiss a complaint, and only King has filed a complaint here. *Hall*, 935 F.2d at 1109.

[16] *See Gale v. Uintah Cnty.*, No. 2:13-cv-725-RJS-DBP, 2021 WL 4553218, at *2 (D. Utah Oct. 5, 2021).

[17] Fed. R. Civ. P. 54(a); *see also Servants of Paraclete v. Does*, 204 F.3d 1005, 1010 (10th Cir. 2000) (evaluating whether the order before it was a final order and determining it was because it "le[ft] nothing for the court to do but execute the judgment") (quoting *Albright v. UNUM Life Ins. Co.*, 59 F.3d 1089, 1092 (10th Cir. 1995)).

[18] *See* Dkt. 60 at 66.

disposition of the case.[19]  In light of this common practice, the court concludes it would be inappropriate to punish King for attempting to identify a rule and choosing the wrong one.  Had King filed her Motion without mentioning a rule, the court would have identified the correct rule itself.  The court follows that path now.

Motions for reconsideration filed before the entry of final judgment, as here, are properly construed under Rule 54(b).[20]  Rule 54(b) provides that "any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."[21]  And the court "is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b)."[22]  However, the "basic assessment" for reconsideration under Rule 54(b) remains the same as under Rules 59(e) and 60(b).[23]  Motions for reconsideration are granted based on the availability of new evidence, an intervening change in the controlling law, or the need to correct clear error or prevent manifest injustice.[24]  This relief is only appropriate when

---

[19] *See Price*, 420 F.3d at 1167 n.9 (citing Fed. R. Civ. P. 59(e), 60(b), and 54(b)).

[20] *See id.* ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) and citing Fed. R. Civ. P. 54(b)); *see also* Fed. R. Civ. P. 54(b).

[21] Fed. R. Civ. P. 54(b); *see, e.g., Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988) ("It is within the District Judge's discretion to revise his interlocutory orders prior to entry of final judgment.").

[22] *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008).

[23] *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1025 (10th Cir. 2018) (internal quotations and citations omitted).

[24] *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995); *see also Christensen v. Triumph Aerostructures – Tulsa, LLC*, No. 4:18-cv-00511, 2020 WL 609748, at *1 (N.D. Okla. Feb. 7, 2020) ("A motion to reconsider may be considered on the following grounds: (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.") (internal quotation marks and citations omitted); *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981) (affirming district court's reversal of its summary judgment order after a controlling Supreme Court decision was issued between the district court's first and second rulings).

"the court has misapprehended the facts, a party's position, or the controlling law"[25]—in other words, in "extraordinary circumstances."[26]

"Furthermore, clear error normally requires the definite and firm conviction that a mistake has been committed based on the entire evidence, or that a particular factual determination lacks any basis in the record."[27]  The Tenth Circuit has additionally cautioned:

> [A] motion for reconsideration . . . [is an] inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion.  Absent extraordinary circumstances . . . the basis for the second motion must not have been available at the time the first motion was filed . . . .[28]

Thus, a motion for reconsideration should be denied when used to relitigate previous issues or advance arguments that were made or could have been made earlier in the litigation.[29]

## b. Rule 54(b) Analysis

King argues she "is entitled to relief because of the [c]ourt's erroneous decision to dismiss King's claims summarily."[30]  Specifically, she identifies four bases entitling her to reconsideration: (1) the alleged "fabricat[ion]"[31] of the term of employment in the 2020

---

[25] *Servants of Paraclete*, 204 F.3d at 1012 (explaining the nearly identical Rule 59(e) motion for reconsideration standard).

[26] *Van Skiver v. United States*, 952 F.2d 1241, 1244–45 (10th Cir. 1991).

[27] *Syntroleum Corp. v. Fletcher Int'l, Ltd.*, No. 08-cv-384, 2009 WL 761322, at *1 (N.D. Okla. Mar. 19, 2009).

[28] *Servants of Paraclete*, 204 F.3d at 1012; *see also Christensen*, 2020 WL 609748, at *1 ("A motion to reconsider is designed to permit relief in extraordinary circumstances and not to offer a second bite at the proverbial apple.") (internal quotation marks and citations omitted).

[29] *See, e.g.*, *Servants of Paraclete*, 204 F.3d at 1012; *Christ Ctr. of Divine Phil., Inc. v. Elam*, No. CIV-16-65-D, 2018 WL 1770491, at *1 (W.D. Okla. Apr. 12, 2018) ("[S]uch motions [for reconsideration] are not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed.") (internal quotation marks and citations omitted); *Taber v. Allied Waste Sys., Inc.*, No. CIV-13-773-D, 2015 WL 3651531, at *2 (W.D. Okla. June 11, 2015) (denying motion for reconsideration when movants did "not point to an intervening change in controlling law or proffer evidence that[,] through the exercise of due diligence, they could not have previously presented.").

[30] Dkt. 62 at 6.

[31] *Id.* at 3.

Compensation Plan; (2) the court's conclusion the 2018 Agreement expired during King's FMLA leave; (3) the court's finding that King did not identify similarly situated employees; and (4) ICG's actions during the interactive process.[32]  The court addresses each of these bases in turn.

### i.  The Term of Employment in the 2020 Compensation Plan

King contends ICG committed fraud by "enter[ing] a fabricated document as evidence,"[33] which "hinder[ed] the [c]ourt's ability to render a just verdict."[34]  Specifically, she asserts ICG altered the term of employment in the 2020 Compensation Plan from its original form.  The version King proffers states the term of employment as "[b]eginning below signed date,"[35] while the version provided by ICG states the term of employment as "[b]eginning April 1, 2020."[36] King argues this "fabrication of the 2020 Plan facilitated a favorable outcome in [ICG's] favor, as [it] relied on its fictitious effective date as a defense strategy in [its] pleadings."[37]

As an initial matter, King acknowledges ICG provided the allegedly doctored 2020 Compensation Plan in support of its Motion for Summary Judgment.[38]  Therefore, this information and argument was available to her when she filed her Opposition.  While the court understands "King . . . assumed ICG's [2020 Compensation Plan] was identical to the 2020 Plan

---

[32] *Id.* at 2–3, 6 ("The primary discrepancies are the 2018 Agreement and its alleged expiration during King's FMLA leave, King's Equal Pay claim and similarly situated employees, and tension caused by ICG's approach to the interactive process, or lack thereof, which triggered the initial breakdown of the interactive process.").

[33] *Id.* at 3.

[34] *Id.* at 2.

[35] Dkt. 62-1, *Exhibit 23* at 4.

[36] Dkt. 46-2, *Exhibit B-1: Jody King 2018 Compensation Plan* at 12.

[37] Dkt. 62 at 5.

[38] *Id.* at 2.

that Kerekes emailed her on April 7, 2020," her assumption does not support granting a motion for reconsideration.[39]

Even if the court was willing to consider the differences between the two 2020 Compensation Plans as "new evidence," it would not alter the court's decision.  In its Order, the court relied on the termination date of the 2018 Agreement.[40]  The term of employment of the 2020 Compensation Plan was not material to the court's ultimate decision.

### ii.    The Expiration Date of the 2018 Agreement

According to King, the court incorrectly found the 2018 Agreement expired during her FMLA leave, because the Agreement contained no stated expiration date and ICG never communicated to King that her employment would expire.[41]  However, King presented these arguments in her Opposition to ICG's Motion for Summary Judgment.[42]  The court considered them but nevertheless concluded "the undisputed record shows King's 2018 compensation agreement expired on March 20, 2020, after which King was expected to move to a new commission-based agreement."[43]

King advances a new argument that "ICG should be held accountable to the 2018 . . . Agreement in its entirety."[44]  King outlines two ways in which ICG did not strictly follow the

---

[39] *Id.* at 5.

[40] *See, e.g.*, Dkt. 60 at 31 ("Here, the undisputed record shows King's 2018 compensation agreement expired on March 20, 2020, after which King was expected to move to a new commission-based agreement."); *id.* at 36–37 ("As for the compensation shift, ICG explains that King's 2018 compensation agreement expired on March 20, 2020, prompting a shift to a commission-based arrangement, per ICG policies governing sales representatives' compensation and ICG's stated expectations months before King ever mentioned FMLA leave.").

[41] Dkt. 62 at 6, 8.

[42] *See* Dkt. 50 at 6, 18–19.

[43] *See* Dkt. 60 at 31 (citations omitted).

[44] Dkt. 62 at 13.

2018 Agreement.  First, ICG "did not provide performance reviews to King every 6 months."[45]
Second, King argues ICG ignored the portion of the 2018 Agreement that stated, "When agreed
upon by both parties, compensation will switch from salaried to commission."[46]

Neither of these are grounds for reconsideration because King is "advanc[ing] new
arguments[] [and] supporting facts which were available at the time of the original motion."[47]
Additionally, to the extent King is arguing ICG breached the contract by not fulfilling certain
terms of the 2018 Agreement, King does not explain how such a breach should change the
court's legal conclusions about her claims.

### iii.    Similarly Situated Employees

According to King, the court erred when it concluded J.M. and M.B. were not similarly
situated employees.[48]  In support, she cites to three pieces of evidence: (1) ICG's response to her
request for production of similarly situated employees;[49] (2) a screenshot of ICG's website from
an unknown date identifying several individuals working in Colorado;[50] and (3) a screenshot of
ICG's website from an unknown date identifying several individuals working in Salt Lake
City.[51]  All three pieces of evidence appear to have been "available at the time of the original
motion."[52]

---

[45] *Id.* at 9; Dkt. 62-2, *Exhibit B-1: Jody King 2018 Compensation Plan* at 12.

[46] Dkt. 62 at 6; Dkt. 62-2, *Exhibit B-1: Jody King 2018 Compensation Plan* at 12.

[47] *Servants of Paraclete*, 204 F.3d at 1012.

[48] Dkt. 62 at 20 ("ICG rightfully identified [J.M.] and [M.B.] as similarly situated [e]mployees to King during the [d]iscovery [p]rocess of these proceedings and through the production of their Employment Agreements."). However, King focuses on M.B. and does not further develop her argument with regards to J.M.  *Id.* at 20–21.

[49] Dkt. 62-1, *Exhibit 25: Request for Production of Documents No. 10 Similarly Situated Employees* at 9.

[50] Dkt. 62-1, *Exhibit 31: ICG Colorado Sales Reps* at 26.

[51] Dkt. 62-1, *Exhibit 32: ICG Salt Lake City Sales Reps* at 28.

[52] *Servants of Paraclete*, 204 F.3d at 1012.

King argues the court incorrectly found M.B. "solely" responsible for developing the Denver market.[53]  However, the court did not find M.B. was solely responsible for the Denver market.  Rather, the court observed "M.B. was hired with additional responsibilities to enter and develop the Denver market."[54]  Because M.B.'s job responsibilities varied from King's, the court determined he was not a similarly situated employee.[55]

Additionally, citing to *Lenzi v. Systemax*,[56] King contends the court erred because it "should [have] focus[ed] on the discriminatory intent that is evident in King[']s compensation disparity," rather than the "absence of similarly situated male comparators."[57]  To the extent that King is arguing the court "misapprehended . . . the controlling law,"[58] *Lenzi v. Systemix* is a Second Circuit case.  Out-of-circuit decisions are not binding precedent on district courts in the Tenth Circuit.[59]

### iv.    Interactive Process

King contends the January 6 and January 9 meetings "mark[] ICG's initial breakdown of the interactive process."[60]  In particular, according to King, "Loach's crude and disparaging treatment towards King upon learning of her disabilities discouraged King from any hope for a meaningful dialogue regarding accommodations and ICG's commitment to engage in the interactive process."[61]

---

[53] Dkt. 62 at 20.

[54] Dkt. 60 at 59.

[55] *Id.* at 59–60.

[56] 944 F.3d 97 (2d Cir. 2019).

[57] Dkt. 62 at 21.

[58] *Servants of Paraclete*, 204 F.3d at 1012.

[59] *See, e.g.*, *FDIC v. Daily*, 973 F.2d, 1525, 1532 (10th Cir. 1992) (citation omitted).

[60] Dkt. 62 at 7.

[61] *Id.*

King identifies one alleged error in the court's Order: the court "mischaracterized King's condition as depression[,] . . . rais[ing] concerns about the thoroughness [of the] examination of King's Opposition and supporting materials."[62]  However, King does not explain why this error would change the court's conclusion regarding the interactive process—especially since the court ruled in King's favor on the issue, concluding a reasonable jury could find that ICG did not engage in the interactive process.[63]  Though the court ruled in King's favor on this element, it dismissed King's failure to accommodate claim because King did not provide triable evidence demonstrating ICG refused to accommodate her disability.[64]

King's Motion for Reconsideration is denied.

## II.   Motion for Rule 11 Sanctions

King "seeks relief under [Federal Rule of Civil Procedure] 11, for [ICG's] failure to disclose . . . how [it] acquired King's unredacted medical records from Granger Medical Clinic."[65]  Federal Rule of Civil Procedure 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

---

[62] *Id.* at 8.  To be clear, the court did not and does not know what King's disabilities are.  King cites from the background section of the Order, where the court was reiterating Kerekes' statements.  *See* Dkt. 60 at 7 ("During the January 6, 2020 meeting, Kerekes stressed ICG had been unaware King had any depression, anxiety, or other disability, but he 'wanted to make sure [ICG] provide[d] any accommodation [she] need[ed]' to be successful.") (citing *Kerekes Declaration* at 21).

[63] Dkt. 60 at 46–47 ("A reasonable juror could glean from King and Macfarlane's April 2020 email exchanges that Macfarlane 'contributed meaningfully to the breakdown in the interactive process' by failing to address King's request for accommodation.").

[64] *Id.* at 51–52.

[65] Dkt. 62 at 1.

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.[66]

Under Rule 11(c), "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."[67]  "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."[68]

To justify invoking Rule 11, King cites ICG's counsel's "refus[al]" on a May 9, 2023 phone call "to disclose to King how [ICG] acquired King's unredacted medical records."[69] Because of "ICG's relationship with [Granger Medical Clinic]," King "questions the integrity of the process by which these records were acquired."[70]  However, ICG never presented these statements or the unredacted medical records to the court in a "pleading, written motion, or other paper."[71]  As a result, Rule 11(b) is not implicated.  Additionally, King's Motion for sanctions is

---

[66] Fed. R. Civ. P. 11(b).

[67] Fed. R. Civ. P. 11(c)(1).

[68] Fed. R. Civ. P. 11(c)(2).

[69] Dkt. 62 at 21.  In an email following the phone call, ICG's counsel stated, "I checked all the medical records that have been produced thus far in the case (and at the administrative level below).  All medical records are Bates labeled King and were produced by either you and/or your prior counsel."  Dkt. 62-1, *Exhibit 34: Emails Between King and Weron Meet and Confer May 11th and May 12th 2023* at 33 (emphasis removed).  King replied that she "show[s] those records with redactions."  *Id.*

[70] Dkt. 62 at 22 ("ICG's relationship with [Granger Medical Clinic] creates a conflict of interest and questions the integrity of the process by which these records were acquired.").

[71] Fed. R. Civ. P. 11(b); *see also Eisenberg v. Univ. of N.M.*, 936 F.2d 1131, 1133 (10th Cir. 1991) ("[The document] was nonetheless submitted with the intention that the court, as factfinder, rely upon the truth and accuracy of the statements contained therein.").

procedurally improper because it was not "made separately from any other motion."[72]  King's Motion for Rule 11 Sanctions is denied.

### III.    Motion to Compel Discovery

King requests the court "compel [ICG] to fully disclose all Sales Reps and similarly situated employee's [sic] compensation and benefits, as [it] failed to fully disclose this to King during discovery."[73]  However, King's motion does not comply with Local Rule 37-1 and is untimely.

Local Rule 37-1 requires parties to "make reasonable efforts to resolve a discovery dispute . . . before seeking court assistance."[74]  And, "if the discovery dispute remains after reasonable efforts," the motion must "include a certification" detailing these reasonable efforts.[75]  King does not provide any such certification.

Even if she had, her Motion to Compel is untimely.  The operative scheduling order closed fact discovery on May 1, 2023,[76] but King filed this motion almost seven months later on November 29, 2023—after the court entered its summary judgment order.[77]  While the federal rules do not impose specific timing for filing a motion to compel, courts retain discretion to determine whether a motion "is too tardy to be considered."[78]  And Rule 16(b) requires the court

---

[72] Fed. R. Civ. P. 11(c)(2).

[73] Dkt. 62 at 21.  She argues ICG withheld the relevant agreements "as a tactic to circumvent an [e]qual [p]ay lawsuit."  *Id.* at 20.

[74] DUCivR 37-1(a)(1).

[75] DUCivR 37-1(b)(1)–(2).

[76] Dkt. 39, *Scheduling Order* at 3.

[77] Dkt. 62.

[78] *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 682 (10th Cir. 2012); *see also Norton v. City of Marietta, Okla.*, 432 F.3d 1145, 1156 (10th Cir. 2005) (affirming the district court's denial of a motion to compel filed "well after the close of discovery and only two days before the pre-trial conference"); *Mollinger Wilson v. Quizno's Franchise Co.*, 122 F. App'x. 917, 923 (10th Cir. 2004) (holding no abuse of discretion when the district court denied a motion to compel filed after the discovery deadline had passed).

to issue a scheduling order limiting the time to complete discovery.[79]  Once entered, a scheduling order "may be modified only for good cause and with the judge's consent."[80]  Good cause "requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'"[81]  King does not argue she has demonstrated good cause, and the court cannot discern good cause on the face of the motion.  King's Motion to Compel Discovery is denied.

## IV.   Motion to Amend her Complaint

Finally, King argues she "should be allowed to [a]mend her Complaint" because she "has provided material facts proving [ICG] should be held liable for [f]raud upon the [c]ourt, as well as ICG's inconsistent [p]olicy [e]nforcement."[82]  Under Local Rule 15-1, a party seeking leave to amend a pleading must file a motion which contains both "the proposed amended pleading, and . . . a redlined version of the proposed amended pleading comparing it with the pleading sought to be amended" as exhibits.[83]  Additionally, because the scheduling order deadline to amend pleadings has long since passed,[84]  King must also demonstrate good cause for modifying the scheduling order.[85]  King does not meet any of these requirements and her Motion to Amend her Complaint is denied.

## CONCLUSION

As explained above, the court construes King's Motion for Relief as bundling four distinct requests, which the court frames as independent Motions: (1) a Motion for

---

[79] Fed. R. Civ. P. 16(b).

[80] Fed. R. Civ. P. 16(b)(4).

[81] *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citation omitted).

[82] Dkt. 62 at 23.

[83] DUCivR 15-1.

[84] Dkt. 39 at 3 (setting 12/29/2022 as the cutoff date for King to file a motion to amend her pleadings).

[85] Fed. R. Civ. P. 16(b)(4).

Reconsideration; (2) a Motion for Rule 11 Sanctions; (3) a Motion to Compel Discovery; and (4) a Motion to Amend her Complaint.  For the reasons discussed above, the court DENIES all of King's requests in her Motion for Relief from Order Granting (In Part) Defendant's Motion for Summary Judgment.[86]

       SO ORDERED this 2nd day of August 2024.

                          BY THE COURT:

                          _____

                          ROBERT J. SHELBY
                          United States Chief District Judge

---

[86] Dkt. 62.